Davis *v.* Brigham.

RICHARD DAVIS *versus* JEFFERSON BRIGHAM & *als.*

A lease of so much land adjoining a stream, as shall be necessary and convenient for making and using a canal to " slip lumber" from an upper to a lower pond, does not by implication grant any right to flow the lessor's land by the erection of a dam.

A complaint for flowing land, will lie against the occupant as really as against the owner of a dam.

A right to flow lands for the working of a mill, may be acquired by prescrip-

tion, although the flowing was occasioned by different dams, owned by different persons.

THIS was a complaint for flowing about 10 acres of land. The respondents pleaded that they had a legal right to flow without compensation. The respondents claimed the right to open and close, and were allowed to do so, the complainant objecting thereto.

It appeared in testimony, that Joseph Walker caused a dam to be built across a stream between Crotched pond and Long pond, for the purpose of floating logs through a canal or slip from one of those ponds to the other, during the summer season of the year 1822. To exhibit his right to do so, and to show that the flowing caused by that dam was of such a character, that no right to flow the lands would be acquired by flowing them for more than 20 years, the complainant read a lease from Artemas Brigham to Joseph Walker, dated Jan. 14, 1822; also a deed from Billy Emerson and Joseph Sears to Joseph Walker and others, dated March 15, 1826; also a lease from Joseph Sears to Joseph Walker, dated Jan. 14, 1822.

It appeared that Emerson and Sears, when these conveyances were made, were the owners of the lands flowed, from whom the title came to the complainant. It also appeared that Artemas Brigham was the owner of the land upon which the dam was built, and there was testimony tending to prove and to disprove the fact that he became an owner or part owner of the dam, by allowing Walker to cut a considerable portion of the timber for building it upon his land. Artemas Brigham erected a mill for dressing cloth, during the same season that the dam was erected, and used the same for that purpose during the fall and winter before Walker slipped logs the next spring. He conveyed by deed to James Flint and Aaron Littlefield, on May 20, 1823, a part of the land and privileges for mills; and Brigham, Flint and others, during the year 1823, erected mills below the dam to be operated by means of a flume extending from the dam about thirty feet to the mills. These mills, and others erected below the dam,

have been continued and operated to the present time. A new dam in connection with a bridge, which bridge was built by the town across the stream, was built 10 or 12 years ago, and there was testimony tending to prove, that it was at one end 30 feet further up the stream and near the middle 10 feet; and that the water was stopped by it, 30 feet further up the stream than the piles of the old dam, except so far as it flowed through the flume, which was extended after the new dam was erected about 30 feet on one side, and about 25 feet on the other side to connect the new dam and the old flume, which remained unaltered. There was much testimony introduced by the parties, tending to prove that the old dam flowed the water as high or higher upon the land, owned by the complainant, than the new dam and flume, and to disprove it and show that the water for several years, had been flowed higher and continued longer upon the land; and there was testimony tending to prove that Joseph Walker, and others under him, made a slip from one of the ponds to the other before named, and used and controled the dam for the purpose of running logs through the same; that this was done in the spring of the year ending usually by the middle of May; and that the time occupied for such purpose, was from 2 to 4 weeks, when there was a freshet; and that occasionally, the water and dam were used by him in the summer or autumn, for a short time for the same purpose, to run the logs through (when there was a sufficient freshet,) which were left in the spring. This use was continued from the year 1822 up to the year 1836 or 1837, when all the timber had been removed, and it ceased.

It appeared that there were two openings through or under the bridge, one of 40 feet and one 20 feet, and there was testimony tending to prove, that these were wider than the natural stream, and that the water was wholly controled by the old flume, both during the former and present dams. No water had appeared to have flowed over the new portions of the flume.

The title of the respondents to the land on which the dams were built, and to the mills, was by several conveyances, de-

duced from Artemas Brigham, the former owner of the lands, and from former owners of the mills.

James Flint, Aaron Littlefield and Artemas Brigham, were called as witnesses for the respondents, and being examined on the *voire dire*, it appeared that they had each of them conveyed portions of the dam and mills to the respondents, or others from whom respondents derived their titles, and had so conveyed by deeds with the usual covenants of warranty. These witnesses were objected to as interested. But the objection was overruled and they were permitted to testify.

The jury were instructed to determine from the testimony, whether the owners and occupants of the mills had or had not caused the lands of the complainant to be flowed higher, or the water to be continued on longer, during the last three years before the complaint was filed, than during any period of more than twenty years successively, before that time, doing damage to the lands during that period; that, if they should find that the lands had been so flowed to a greater extent, they should find a verdict for the complainant. If they did not so find, it would become necessary to consider the circumstances attending the former flowing, and by whom such flowing was caused; to ascertain whether the respondents had acquired a legal right to flow the lands, without the payment of damages; that, to acquire such a legal right to flow the lands, the respondents must prove that the owners or occupants of the mills, had caused the lands to be flowed as high and to as great an extent for more than twenty successive years, doing damage to the lands during that time, as they had been flowed during the last three years before the complaint was filed. And that if they found that the lands had been thus flowed for more than twenty years successively, by the mill owners, without taking into account or estimating any flowing of the lands caused by Walker and others for the purpose of floating logs from Crotched pond to Long pond, the right to continue to flow them to such extent, would be acquired; that in behalf of the complainant it was contended, that the respondents' or mill owners' right to flow, would be affected by the deed from Artemas Brigham

to Joseph Walker and others, but as it did not appear that Brigham had ever owned the lands flowed, he could not convey any right to others to flow them; and that conveyance would not prevent the owners of the mills from acquiring a right to flow the lands by the flowing as before stated, for more than 20 years; that it appeared, that Emerson and Sears were the owners of the lands flowed, when they made their deeds on Jan. 14, 1822, and on March 15, 1826, and that by those deeds they conveyed to Walker and others, the right to flow the lands now owned by the complainant, for the purpose of floating logs from Crotched pond to Long pond, and for no other purpose; that such flowing would be caused rightfully, and could not therefore be estimated or taken into account, while considering the extent to which the lands had been flowed for more than 20 years by the mill owners.    The trial was had before Shepley, C. J.    The jury found a verdict in favor of the respondents, which is to be set aside and a new trial granted, if these instructions or rulings were erroneous.

*Fessenden, Deblois & Fessenden,* and *Littlefield,* for plaintiff.

1. The user, to confer the right claimed, must have been, for twenty years, *exclusive, uninterrupted, continuous, successive. Whipple* v. *Cumb. M. Co.,* Story; Angell on Water Courses, c. 4, sect. 4, p. 114; 2 Chitty's Precedents in Pleading, note to p. 600; *Tyler* v. *Wilkinson,* 4 Mason, 397; *Williams* v. *Morland,* 2 Bar. & Cress. 910; *Beally* v. *Shaw,* 6 East, 215; *Palmer* v. *Mulligan,* 3 Caines, 316; *Blanchard* v. *Baker,* 8 Greenl. 266; Angell on Water Courses, 83, note 1; *Balston* v. *Bensted,* 1 Campb. 163.

2. The defendants admit the flowing as alleged in the complaint, and justify by claiming a right to flow to the extent alleged, without the payment of damages.    The defendants are therefore by the pleadings bound to prove the fact of flowing in manner alleged, for more than 20 successive years, at all times exclusively, uninterruptedly and continuously.    And the jury should have been so instructed.

3. The grant to Walker and the Warrens of a right to build

a slip, *implied* a right to build and maintain the necessary dams to carry out their object, slipping timber. *Elliot* v. *Shepherd*, 25 Maine, 371, 378; *Nelson* v. *Butterfield*, 21 Maine, 229 237.

4. There cannot be two persons, each claiming and exercising the entirety of the right to flow, by means of the same dam, and in exclusion of all others.

5. Consequently, the right of Walker and the Warrens to flow, in manner and for the purpose they did, having and exercising the exclusive right while they chose, for the purpose of slipping logs, broke up and interrupted the continuity of the defendant's occupation, and this *interruption* continuing till 1836, the defendants have had no twenty years in which to acquire a right.

6. The alteration made by building a new dam further up stream, and extending the flume, was a new flowing and by means of a new dam. It was a new wrong done to the owners of our lot; and cannot be legally connected with the former flowing, so as to make out 20 years. Here were two different dams on different sites. They cannot be so coupled together, as to make a continuous disseizin. The principles are the same as those relating to disseizin of land.

7. Walker and the Warrens being the exclusive owners of the dam up to 1836, and always occupying every year at the time the lands were flowed, the defendants could not be called on to answer in damages to the owners of our lot, the defendants not owning the dam. *Lowell* v. *Spring*, 6 Mass. 398.

The charge to the jury was not sufficiently comprehensive or sufficiently definite and explicit, and was therefore calculated to mislead the jury.

*Carter, Willis* and *Fessenden*, for respondents.

1. The witnesses were rightfully received. *Bliss* v. *Thompson*, 4 Mass. 448; *Ely* v. *Forward*, 7 Mass. 25; *Phillips* v *Bridge*, 11 Mass. 242.

2. The instructions were correct. The new dam was substantially the same as the old one. It flowed no more than the old one. So the jury have found. The effect of the

Davis *v.* Brigham.

lease from Bigelow, and of the supposed license from Emerson & Sears was correctly laid down.

The right to slip logs gave no right to erect a dam. Walker built the dam in 1822, on Brigham's land. There is evidence that Brigham owned a part of it. He built a mill and flowed the land now owned by the complainant. He occupied it for a year as owner. Suppose Walker had been prosecuted for the flowing; it must have been by complaint under the statute. Walker and Warren's occupancy was for a special purpose and concurrently with Brigham, whose permission, that others should occupy under him, could not impair his rights derived from user.

It is objected, that the respondent did not use the water *continuously*. It is enough that he used it when wanted. The use of it too was *exclusive*. For Walker occupied under him. A purchase by Walker from the complainant of a right to flow cannot affect Brigham's rights. There was no occupation adverse to his. The maintenance of the bridge by the town was no occupation of the water.

Not necessary for defendant, that the successive dams should be precisely on the same spot. It is the back-flowing of the water, not the position of the dams, this is the material question. R. S. c. 126; *Stowell* v. *Flagg,* 11 Mass. 364; *Farrington* v. *Blish,* 14 Maine, 423.

It is also objected that the instructions were not sufficiently full and explicit. If they were correct, it is enough. But they covered the whole inquiry, were clear and distinct. If one have the entire occupation, no other can have it; and it was expressly stated, that the acts of Walker and Warren could not avail the defendant.

*S. Fessenden,* for plaintiff, in reply. — It is the owner of the dam and not of the mill, that is responsible for flowing. The owner of the dam can alone acquire rights by occupancy. During the time that Walker and Warren occupied *under us,* they, as owners of the dam, could acquire no rights against us. We could enforce no rights against them, even though they

claimed to flow under Brigham.    Neither had we any remedy
against the latter, for he did not own the dam.

Defendant. says, that Walker and Warren occupied as his
servants.    But they occupied under us.    Then, if his servants
occupied under us, his occupancy was under us also.

SHEPLEY, C. J. — I understand the argument to be, that
Walker and Warren acted under a written authority from
both parties, each authorization being entirely independent
of the other.

The opinion of the Court was by

SHEPLEY, C. J. — The process is a complaint for flowing
lands.    The defence is a right acquired by prescription to flow
them without compensation.    A verdict was found in favor of
the respondents under instructions which are alleged to have
been erroneous.    The more important positions presented in
argument by the counsel for the complainant, deserve consid-
eration.

1. The first has reference to the conveyance or lease made
on January 14, 1822, by Artemas Brigham to Joseph Walker.
The jury were instructed that it " would not prevent the own-
ers of the mills from acquiring a right to flow the lands, by
the flowing as before stated for more than twenty years."    The
argument is, that by implication it granted the right to build a
dam upon the lands of the grantor, and to flow them .for the
purpose of floating logs from Crotched pond to Long pond.

It recites, that Walker is about to make a canal from Crotch-
ed pond to Long pond, for the purpose of slipping timber from
one of those ponds to the other ; that Brigham is the owner of
land in and adjoining the natural stream, which empties the wa-
ters of one pond into the other, which will be necessary to be
had for the aforesaid purpose.

Brigham leases to Walker " so much of my said land at and
adjoining said stream of water, as shall be found necessary and
convenient for him or them to use and occupy for the purpose
of making and using a canal, for the object and use aforesaid,
and for no other purpose."    Nothing can be considered as

granted by implication, which is not necessary or convenient for making and using the canal. A supply of water would be necessary for its use, but it would not be necessary, that it should be supplied by the erection of a dam or feeder, upon the lands of the grantor.

The grant of lands, " for making and using a canal," is quite different from the grant of lands, for the erection of a dam to raise a head of water, to supply the canal. The right to occupy land to make and use a canal, and the right to occupy it, to raise a head of water to feed it, are so different, that the one does not by implication or otherwise in the ordinary use of language, or in the construction of such improvements, include the other. A canal may be made and used across the land of a person without injury to his lands, not within the line of the canal and pathway adjoining it. If a grant of land to make and use a canal were to be considered as conveying by implication the right to do all that might be necessary or convenient to procure and continue a supply of water for its use, the grantor might find the value of his estate materially lessened without being aware, that he had in any manner yielded such a right.

If the construction insisted upon were conceded, the conclusion deduced in argument from it, could not be sustained. That appears to be, that Walker owning and occupying the dam, rightfully to float timber and thereby acquiring the right to flow the lands owned by the complainant, such use of the dam and right to flow, would preclude the respondents from obtaining a prescriptive right to flow them. This argument assumes, if one person has by grant or license obtained an easement or servitude in the land of another, for a particular purpose, that a third person may not by prescription obtain a right to an easement in the same land, for a different purpose. The fallacy of the argument, is found in its application of the terms uninterrupted and exclusive to the whole flowing of water upon the land, and not to the particular flowing or use of the land, by the respondents. The question is not, whether the respondents alone or exclusively had caused the land to be

flowed, but whether they had flowed it for a particular purpose, without interruption by the owners of the land, and excluding them from interference with such flowing.

Prescription rests upon the presumption of a grant, which has been lost. The owner of land may grant to one person a right to flow his lands, for the purpose of floating timber, and to another the right to flow the same lands for the purpose of working mills. If one has lost his deed containing the grant, and can prove, that he has exclusively and without interruption exercised the right of flowing for his purpose, for more than twenty years, he will not lose it, because it can be shown, that the other has retained and can produce his deed granting to him a right to flow the land for his own purposes. The right of Walker and others, to flow the lands for floating timber, could not prevent the respondents from acquiring a prescriptive right to flow them for the purpose of working their mills. In the case of *Kent* v. *Waite,* 10 Pick. 138, the opinion of the Court states, " different persons may have a right of way over the same place by different titles, one by grant, another by prescription, and a third by custom ; and each must plead his own title, and if he proves it, it is sufficient, although he may also prove a title in another, provided the titles are distinct and not inconsistent."

Nor would the interruption of the use of the water for working the mills during some weeks of each year, occasioned by its use for floating timber, prevent the respondents from obtaining a prescriptive right to its use for their own purposes subject to that interruption. It would only show, that their right to its use was a qualified one. In the case of the *Bolivar Manuf. Co.* v. *Neponset Manuf. Co.,* 16 Pick. 241, it was decided, that a right to the use of water in a trench or canal from Mashapog brook to Steep brook, might be acquired by prescription, subject to an interruption by third persons, for an indefinite portion of each year. The argument therefore, that " the occupation of Brigham during a portion of every spring was interrupted, the continuity of that occupation broken," cannot prevail.

2. Another position presented in argument is, " a complaint for flowing must be brought against the owner of the dam."

" Hence, while Walker and others owned and occupied the dam and also the right to flow acquired by deed, the defendants could not be acquiring any right to flow. No complaint could be maintained against them." The position that a complaint could be maintained only against the owner of the dam is not correct.

The statute of Massachusetts, passed on February 27, 1796, provided, " it shall be lawful for the owner or occupant of such mill to continue the same head of water to his best advantage," and the verdict and judgment founded upon a complaint for flowing " shall be the measure of the yearly damages, until the owner or occupant of such mill, or the owner or occupant of such lands, so flowed, shall on a new complaint" " obtain an increase or decrease of said damages." The act of February 8, 1821, c. 45, in all the sections giving the right to flow and authorizing the process, speaks of the owner or occupant of the mill, without using the word dam. The ninth section speaks of the owner or occupant of the dam. Hence it was stated in the case of *Nelson* v. *Butterfield*, 21 Maine, 237, " the owner or occupant of the mill, for the use of which the water is raised, is by the statute made liable for the payment of the damages. And the ninth and tenth sections of the act would seem to require such a construction, as would make the owner or occupant of the milldam, which raised the water for the use of the mills, also liable." The case of *Lowell* v. *Spring*, 6 Mass. 398, does not decide otherwise. The complaint was brought against the owner of the dam, and the Court, therefore, only spoke of the owner of the dam. A complaint could therefore have been maintained against the respondents as owners of the mills, for flowing the lands, or against them as occupants of the dam for the purpose of working their mills. The fact that the dam was owned by another would have been no excuse or justification. That it was occupied to raise a head of water for the use of the mills would be sufficient to render the owners liable. A plea by the respondents, that Walker and

others were the owners of the dam and were rightfully entitled to flow the lands for the purpose of floating timber, could afford them no protection. Such a plea would clearly be bad.

3. It is contended, that no prescriptive right to flow the lands, could be acquired, because the flowing was occasioned by two dams built by different persons, and because the flowing was occasioned differently by the different dams. If, as has been already shown, a mill owner may be liable for damages, by making use of a dam owned by another to raise a head of water to work his mill, it will be unimportant, that the dams were built by different persons or owned by different persons. Nor can it be material in what manner the flowing was occasioned, if it were for the working of the mills, and the lands were flowed to the extent required. If the question presented, were, whether the respondents had acquired a right to maintain a dam in a particular place, the fact, that it had been kept up in different places, might be material. The question here presented, has no reference to the particular location of the dam, or to the persons by whom it was built. It has reference to the use of the water flowed to a certain height and continued for a certain time, during each season for the working of mills, whereby the lands were flowed and injured. The positions assumed in argument, do not appear to be fully sustained by the facts reported. The water, so far as it was obstructed by the dam last built, was obstructed by it thirty feet above the place, where it was obstructed by the former dam, while the actual obstruction, which caused the water to flow back upon the land, was at all times, during the existence of each dam, the same. The case finds, that it was occasioned by the flume, which had never been altered. That, which caused the water to flow for the use of the mills, was at all times the same and situated in the same place. Both dams were occupied by the owners of mills, as means to gather the waters into that place for the use of the mills.

4. It is insisted, that the instructions were erroneous, because they did not require the jury to find, that the flowing was adverse, exclusive, and uninterrupted. The value of in-

Davis *v.* Brigham.

structions consists in the presentation of the particular points in contest clearly, unincumbered by other considerations, with the testimony directly applicable to them. When the question is, whether a right to flow has been obtained by prescription, and one part of the definition of a prescription is so necessarily involved in the inquiry, that it is not alluded to as matter of contest or investigation, it would be quite useless, and only suited to introduce obscurity, to proceed in a formal manner to define a prescriptive right, or to declare how it could be acquired. No point appears to have been made, nor any testimony to have been introduced to prove, that the flowing occasioned by the owners of mills, was or was not adverse. The fact, that it was done without the exhibition of any grant or license from the owners of the lands, and that their lands were thereby damaged, precluded all formal consideration of its adverse character. The jury were required to find, that the flowing occasioned damages during each season, of more than twenty years, which must necessarily exhibit the exercise of an adverse claim of right, when no grant or license was offered or pretended. If there had been any controversy respecting it, and the charge had omitted to notice it, the counsel should have requested instructions upon it.

The instructions requiring the jury to find, that the owners of the mills had caused the lands to be flowed as high and to as great extent, for more than twenty successive years, as they had been for the last three years, necessarily required them to find, that there had been no interruption to the enjoyment of the right asserted.

The word exclusive, when used with reference to the acquisition of such a right, can only mean, that the enjoyment of the easement as claimed, whether it be a limited or more general enjoyment, should exclude others from a participation of it. It is in this sense, that it is used in the cases cited. That the enjoyment by those claiming a prescriptive right should not be an enjoyment by them and others, strangers to them and to their claims. The instructions did require, that the enjoyment should be exclusive, in the sense in which that term

can be applicable, that is, that it should be by the mill owners, and not by them and other persons. The jury were required to find, that the mill owners had caused the land to be so flowed.

Perhaps the best test, of what is by law required to establish a prescriptive right to an easement, is a good special plea setting forth such a right in bar of an action. The terms adverse, exclusive and uninterrupted, so much insisted upon in argument, to show that the instructions were defective or erroneous, will not be found in the best precedents for such pleas. 2 Chitty's Pl. 518, 561, 563, 569, 573; *Stennel* v. *Hogg*, 1 Saund. 222; *Potter* v. *North*, *idem*. 348; *Mellon* v. *Walker*, 2 Saund. 1. The instructions required that the jury should find facts sufficient to have sustained such a special plea. And yet there is no doubt, that the terms insisted upon are appropriate to ascertain, whether a prescriptive right has been acquired; when they are not necessarily included in the facts found, and are material points of contest, they should receive attention. In the present case the complainants do not appear to have been aggrieved, by the omission to use either of those terms in the instructions.                    *Judgment on the verdict.*