EDWIN G. MOORE, Respondent, *v.* EDMUND L. DAY, Appellant.

Third Department, December 28, 1921.

Easements — action to establish right of way, over defendant's farm, beginning and ending at public highways one of which was navigable body of water — no mention in deed to plaintiff's predecessor in title of any right of way — roadway maintained for common owner's use and use of his tenants along Lake Champlain — evidence that right to use roadway was given plaintiff's predecessor in title upon invitation of common owner and by his permission in common with other tenants — no indication of right of way by necessity where plaintiff's predecessor in title used roadway for period and subsequently turned to exclusive use of motor boat — circumstances such as afford explanation and defeat presumption that use was adverse — easement by prescription based on theory of lost grant — presumption of another or different grant cannot be assumed where deed makes no mention of easement — use by express or implied permission cannot ripen into easement by prescription — plaintiff without right to easement where right of way begins and ends at public highways and is not properly appurtenant to his property and where right to use road terminated with death of plaintiff's predecessor in title.

In an action to establish an easement and to enjoin the defendant from interference with an alleged right of way over his farm, it appeared that the common owner conveyed by deed certain premises located upon Valcour Island in Lake Champlain to the plaintiff's predecessor in title; that at the time of conveying the land the common owner was in possession of a certain tract of land lying on the westerly mainland of Lake Champlain, immediately opposite Valcour Island; that there was a half mile of navigable water lying between the Valcour Island property purchased by the plaintiff's predecessor in title and the mainland farm

of the common owner; that there was a public ownership of the underlying lands, with a complete right on the part of plaintiff's predecessor in title to reach the navigable waters of the lake from his island camp site and that he could leave the island camp only by boat. It also appeared that there was no mention in the deed conveying the island camp site of any right of way, nor was there any suggestion that the plaintiff or his predecessor in title performed any act of ownership over the alleged right of way nor was there any express agreement for an easement; that the common owner maintained the roadway from the highway to the margin of the lake for his own use and for the use of his tenants who occupied cottages along the lake front and the plaintiff and his predecessor in interest were permitted to make use of the beaten track, not to the exclusion of the common owner and the defendant, his son, and his tenants, but in common with them. There was evidence that the original entry upon the way was by permission, upon the implied invitation of the common owner and that the plaintiff's predecessor in title used the roadway for a period, subsequently turning to the operation of a motor boat between his camp and the public dock at Plattsburgh and did not generally go from the farm to the island.

*Held,* that there is no indication of a necessity or a materially greater convenience by reason of the alleged right of way across the defendant's farm by the mere fact that the plaintiff's successor in title drove down the roadway for a period instead of owning a motor boat and going by water. Nor was the right of way so material to the enjoyment of the purchase that it is to be presumed that there was a grant of the easement when no mention was made in the deed of any such intention and where he subsequently operated a motor boat between the island camp and the public dock at Plattsburgh.

While the use of an easement for twenty years, unexplained, will be presumed to be under a claim or assertion of right, and adverse, and not by leave or favor of the owner, the circumstances surrounding the use of defendant's roadway afford an explanation and defeat the presumption that the use was adverse.

Easements by prescription are based upon the theory that there has been a grant of the right, but that the grant has been lost. Hence, where the prescriptive right is by the pleadings alleged to be contemporaneous with the deed which is in the record and which makes no mention of the alleged easement, it cannot be said that there is a legitimate ground of presumption of another or different grant.

Use by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription, since user as of right, as distinguished from permissive user, is lacking. If permissive in its inception, such permissive character will continue of the same nature, and no adverse user can arise until there is a distinct and positive assertion of a right hostile to the owner, and brought home to him.

The alleged right of way, beginning and ending at public highways, one a navigable body of water, was not properly appurtenant to the plaintiff's

property. Accordingly, the permission to use the same was merely an easement in gross, terminating with the life of plaintiff's predecessor in title, and plaintiff has no rights whatever outside of those expressly granted in his deed which is confined to Valcour Island.

JOHN M. KELLOGG, P. J., dissents, with memorandum.

APPEAL by the defendant, Edmund L. Day, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Clinton on the 10th day of December, 1920, upon the decision of the court rendered after a trial at the Clinton Trial Term without a jury.

*John E. Judge,* for the appellant.

*Charles J. Vert,* for the respondent.

WOODWARD, J.:

The complaint in this action alleges that on the 15th day of July, 1887, one Nelson Day conveyed to one George W. Baldwin, by deed, certain premises located upon Valcour Island in Lake Champlain, the particular description of which is set forth; that the said Baldwin immediately entered into possession and continued in the ownership of said premises until on or about the 22d day of August, 1910, when he conveyed the same by deed to the plaintiff in this action. Lake Champlain is, of course, a navigable body of water, and as such is a highway which the public has a right to use for the purposes of transportation and commercial intercourse (21 Am. & Eng. Ency. of Law [2d ed.], 439, 440; *Morgan* v. *King,* 35 N. Y. 454), and this right extends to the entire body of water. (21 Am. & Eng. Ency. of Law [2d ed.], 441, and authorities there cited.) It appears from the facts in this case that Valcour Island is about one-half mile from the mainland, and that the navigable channel lies between the mainland and this island. It is well established that the State has title to the lands under the navigable and boundary lakes of the several States, with a limited right to dispose of the same where this may be done without prejudice to the rights of the public (*Saunders* v. *N. Y. C. & H. R. R. R. Co.,* 144 N. Y. 75, 85), but there is no suggestion that any of the lands underlying Lake Champlain, in so far as this case is concerned, have ever been conveyed. It must be assumed, there-

fore, that the lands underlying the channel between the mainland and this island are owned by the State as trustee for the public. (*Saunders* v. *N. Y. C. & H. R. R. R. Co.,* *supra.*)

Having alleged the sale of this island property, and its vesting in the plaintiff, the complaint further alleges that at the time of making the aforesaid conveyance to George W. Baldwin the said Nelson Day was the owner and in possession of a certain tract of land lying on the westerly mainland of Lake Champlain, immediately opposite Valcour Island, in the State of New York, and that the said Nelson Day has since died leaving the title to this property in his son, the defendant, who is now the owner and in possession of said premises, subject to a certain easement which is set out as follows:

" That this plaintiff, since the 22d day of August, 1910, has had and still has, and that this plaintiff and his predecessor in title and interest in and to the land described in paragraph ' first ' of this amended complaint [the Valcour Island property], since the year 1887, have had a right of way from said land over and across the land described in paragraph ' second ' of this amended complaint [the mainland farm] freely and at all times to pass and re-pass, between the lake shore and the aforesaid public highway leading from the city of Plattsburgh to the village of Keeseville, on foot, with horses, carriages, wagons and automobiles, and the right to use the lake shore at the end of said right of way, for landing passengers and landing and storing boats."

The complaint then alleges an interference with this alleged right on the part of the defendant, and demands judgment that it be judicially established that the plaintiff has this easement, and that the defendant be enjoined from interference with this alleged right of way, and for other relief.

The answer puts in issue the allegations in respect to the right of way, and the court at Trial Term has made findings of fact and conclusions of law in favor of the plaintiff, directing judgment accordingly. The defendant appeals from the judgment entered as directed.

The respondent claims to be entitled to the judgment upon any one of three theories: *First,* implied grant and

estoppel; *second*, by necessity; and *third*, by prescription. The learned trial court, in its opinion, tells us that the case has been determined upon the latter theory, and we will discuss the case from this standpoint in the first instance, for if there is a prescriptive right then there is no need for further discussion.

Before entering upon this point it is, perhaps, necessary to consider the course of the trial. Before the case was reached for trial Mr. Justice Salisbury consented to take the testimony of George W. Baldwin, the original purchaser of the island premises from Mr. Day, as Mr. Baldwin was a resident of Vermont and happened to be in the State at the time and it would be inconvenient for him to return. At this somewhat informal taking of testimony defendant's counsel objected to testimony in relation to personal transactions between the plaintiff's grantor and Nelson Day, then deceased, as " immaterial and improper," and as " immaterial," and the court responded: " All received subject to motion to strike out."

Subsequently, upon the case being reached for trial, defendant's counsel moved to strike out the testimony of Mr. Baldwin, urging that such testimony was in violation of section 829 of the Code of Civil Procedure and the Real Property Law, among other things. The court reserved decision, heard the evidence, and the case was duly submitted. Mr. Justice Salisbury died before determining the case, and it was submitted under a stipulation to Mr. Justice Van Kirk, who refused to strike out this testimony, and determined the questions involved as above indicated, though conceding that the testimony of Mr. Baldwin was incompetent under section 829 of the Code of Civil Procedure, if the question had been properly raised. Whether, under the circumstances, upon a motion to strike out, the defendant was entitled to have his motion granted it does not seem important to inquire at this time as it seems clear to us that the judgment must be reversed upon the case as it stands independent of this question.

Keeping in mind that there was a half mile of navigable water lying between the Valcour Island property purchased by Mr. Baldwin and the mainland farm of the defendant's father, and that there was a public ownership of the under-

lying lands, with a complete right on the part of Mr. Baldwin to reach the navigable waters of the lake from his island camp site, and that he had a full and complete right to the use of any and all parts of this important lake, and that he could leave the island camp only by boat, we have a foundation for considering some other matters which appear in the case having a bearing upon the alleged title to the easement by prescription. Mr. Baldwin resided at the time of making this purchase at Plattsburgh. Nelson Day's mainland farm was distant between five and six miles from Mr. Baldwin's home and upon the main highway running back from the margin of the lake some distance, at the particular point in question some sixty-five or seventy rods, the general direction being north and south. The island camp site was about one-half mile east of the shore line of the lake, and was just about the same distance from the public dock at Plattsburgh by boat that the Day farm was by the roadway, and Mr. Baldwin himself testified that in 1899, twelve years after making the purchase, he procured a naphtha launch about twenty-five feet in length, and that he operated this between the island camp and the public dock at Plattsburgh, and that he did not use it generally to go from the Day farm to the island, so that it appears without contradiction that there was an open and available highway which Mr. Baldwin used of his own choice and which was available to him at all times. The mere fact that Mr. Baldwin owned a horse and drove down the highway for a period, instead of owning a motor boat and going by water, does not indicate either a necessity or a materially greater convenience by reason of the alleged right of way across the defendant's farm, and the fact that Mr. Baldwin subsequently made a change to the motor boat simply indicates that he regarded this as a more convenient and desirable method of reaching his summer camp, and completely does away with any legitimate conclusion that the right of way was so material to the enjoyment of this purchase that it is to be presumed that there was a grant of the easement, where no mention is made in the deed of any such intention. It is to be observed that the complaint alleges that " since the year 1887," which was the year in which the

deed bears date, the plaintiff and his predecessors in title " have had a right of way," etc., and the testimony of Mr. Baldwin is to the effect that Mr. Day took him over an alleged well-defined roadway on the 24th day of July, 1887, leading down to the lake, and that Mr. Day told him he could use this way upon condition that he should keep the bars closed, and that he purchased the premises on that day, the deed being subsequently delivered. Not a line in the deed mentions any right of way; there is not even a suggestion that the deed is intended to pass appurtenances. It conveys the Valcour Island property by deed, as required by the statute (*Heyman* v. *Biggs*, 223 N. Y. 118, 125, and authority there cited), and closes there, and the rule is well settled that all conversations and agreements are deemed to be merged in the written contract. No other time is suggested when there was any agreement made; no other time when there was any consideration for such an agreement. " There are no doubt many cases in which courts recognize an equitable right to an easement without a deed," say the court in *Wiseman* v. *Lucksinger* (84 N. Y. 31, 41), " but there will be found in them either an express agreement for an easement, or an acquiescence or consent by conduct which has led to the erecting of permanent works, or valuable and lasting improvements, or some other fact which would make the assertion of a legal title operate as a fraud upon the persons setting up the equitable right." There is no suggestion that the plaintiff or his predecessor in title has erected any works of any kind upon the alleged easement; that they have even so much as run a plank out into the water, or performed any act of ownership over this alleged right of way. Nor is there any express agreement for an easement. Mr. Baldwin testifies that when he visited the place for the purpose of looking over the camp site he was taken by Mr. Day over a well-defined track to the lake shore; that Mr. Day took him in a boat and carried him over to the island and showed him the premises; that they had some conversation about Mr. Baldwin's purchasing the premises, and that he (Baldwin) called attention to the fact that he could see no approach; that " there was no landing anywhere, and we had to drive down from Plattsburgh, the only way to get there unless we rowed a boat

there — and he told me that we could come down the same road that we had already come down, landing on the mainland — that that would be open and that would be our approach to the camp, and that it had been used for that purpose, but that we must keep the bars closed, as they used it for a pasture." The witness says this statement was made before the trade was completed, and not only do we find no mention of it in the deed but it does not reach the dignity of an express agreement for an easement; its language is merely that of a permission.

The undisputed evidence in this case is that whatever of a track or roadway existed upon the premises of Mr. Day in 1887, at the time of this purchase, led down to the lake front where Mr. Day had several cottages which he rented to summer campers who in turn procured many of their supplies from him. In other words, this roadway was merely a track down through the pasture lands which was made use of by Mr. Day for the purpose of affording accommodations to his tenants on the lake front; it was to be open for his own use of the mainland farm and his tenants, and if his alleged language, claimed to have been remembered over a period of thirty-two years, be referred to the conditions prevailing at the time, it will be seen that it is entirely consistent with a permission to make use of this farm road, not as an exclusive easement, but in common with his own use and that of his tenants. Under such circumstances no presumption arises that the use is adverse. There is no doubt that the general rule is that " ' the use of an easement for twenty years, unexplained, will be presumed to be under a claim or assertion of right, and adverse, and not by leave or favor of the owner ' " (*Colburn* v. *Marsh*, 68 Hun, 269), but the circumstances surrounding the use often afford the explanation and defeat the presumption, and such is the case here under consideration. " In the present case," say the court in *Wood* v. *Reed* (30 N. Y. Supp. 112), " the way or track through the servient tenement was used by the owners of the land for their own purposes and convenience in drawing wood and timber, etc.; and in such case the use of a way by others does not necessarily import adverse user under a claim of right, and exclusive, within the meaning of the term, but, from the fact that it

is kept open and used by the owner for his purposes, it may be inferred that the use by others is by his consent and permission. [*Harper* v. *Advent Parish*, 7 Allen, 478; *First Parish* v. *Pratt*, 4 Pick. 222; *Kilburn* v. *Adams*, 7 Metc. 33; *Davis* v. *Brigham*, 29 Me. 403; *Day* v. *Allender*, 22 Md. 511; *Speir* v. *Town of New Utrecht*, 49 Hun, 294 * * *.] The owner knew that those having lands south of his were in the habit of passing over his lands to the highway; and in 1883, when he, having erected a sawmill on his premises, desired, for his convenience, to make a new roadway on his lands, he informed those other persons that if they would help him open the road they might use it. They did so. This was mere permission on his part to pass over the new way, which they did, occasionally, without any interruption, until after the plaintiff became the owner." (See *Wiseman* v. *Lucksinger,* *supra,* 38.) " If one in walking or driving finds a way open before him, and uses it because it seems to be intended for such use," say the court in *Sprow* v. *Boston & Albany Railroad* (163 Mass. 330, 339), "this alone does not show that he uses the way as a matter of right, and such use would not establish a prescriptive right, no matter how frequent or long continued it might be. Merely from using what is open to use, without more, no presumption arises that the use is adverse." (See *Concklin* v. *N. Y. C. & H. R. R. R. Co.,* 149 App. Div. 739, 743, and authorities there cited.)

We have so far considered the case from the standpoint of the testimony of Mr. Baldwin, but the court at Trial Term apparently disregarded this testimony, and rested its decision upon the theory of a prescriptive right. Easements by prescription are, of course, based upon the theory that there has been a grant of the right, but that the grant has been lost. (9 R. C. L. 771.) But here the prescriptive right is by the pleadings alleged to be contemporaneous with the deed which is in the record and which makes no mention of the alleged easement, and it is difficult to see how there may be a legitimate ground of presumption of another or different grant. (*Smith* v. *N. Y. & N. E. R. R.,* 142 Mass. 21, 23.) The presence of a written grant of the premises to which the easement is alleged to be appurtenant, with no mention of such easement, would seem to preclude the idea of another

grant independent of the writing.   But passing this point, it is essential to an easement by prescription: *First,* continued and uninterrupted use or enjoyment; *second,* identity of the thing enjoyed; *third,* a claim of right adverse to the owner of the soil, known to and acquiesced in by him.   (9 R. C. L. 772.)   Beyond this, the use must be exercised by the owner of the dominant tenement, and must be open, peaceable, continuous, and as of right, and it must be exclusive in the sense that the right of the dominant tenement owner does not depend upon a like right in others.   " If the circumstances shown are such as to negative the presumption of a grant by the title holder, the presumption cannot, of course, apply, and no prescriptive rights will arise."   (9 R. C. L. 773.) Here we have a situation where the owner of the title has maintained a roadway or beaten track from the highway to the margin of the lake for his own use, and for the use of his tenants who occupy cottages along the lake front, and the plaintiff and his predecessor in interest have been permitted to make use of this beaten track, not to the exclusion of the defendant and his tenants, but in common with them.   If, as claimed, the plaintiff had an easement over this beaten track, it is an interest in the land; it is a right on his part to exclude others from its use.   (*Herman* v. *Roberts,* 119 N. Y. 37, 42.)   Obviously, the defendant's predecessor in title had no such intention, accepting Mr. Baldwin's testimony upon this point; he simply said that he might use this beaten track, which was openly and obviously used for the convenience of the tenants occupying summer cottages and purchasing a portion of their supplies from the farm.   It is to be remembered that while the complaint alleges a right to use the track for all kinds of vehicles, at the time testified to by Mr. Baldwin the witness went over the track by foot, was taken in a boat and carried to the island camp site, and the permission granted was merely to make use of the way over which they had passed.   There was nothing in this of an exclusive nature; it was a permission to the purchaser of the island property to make a like use of the beaten track as that accorded to tenants on the shore line, and the evidence is undisputed that Mr. Baldwin purchased some of his supplies of Mr. Day, his grantor, so that there was use of the alleged right of way

in subordination to the interest of the owner of the soil, and no presumption can arise.

"Since prescription is founded upon the supposition of a grant," says Ruling Case Law (9 R. C. L. 776), "the use or possession on which it is founded must be adverse, or of a nature to indicate that it is claimed as a right and not the effect of indulgence or of any compact short of a grant. If the enjoyment is consistent with the right of the owner of the tenement it confers no right in opposition to such ownership." But the contract which equity will regard as an equivalent of the grant required at common law or by the statute must be a complete and sufficient contract, founded not only on a valuable consideration, but its terms defined by satisfactory proof, and accompanied by acts of part performance unequivocally referable to the supposed agreement. (*Wiseman* v. *Lucksinger*, 84 N. Y. 31, 38.) "Adverse user," continues Ruling Case Law (*supra*), "is defined as such a use of the property as the owner himself would exercise, disregarding the claims of others entirely, asking permission from no one, and using the property under a claim of right. It is essential that there be such an invasion of the rights of the party against whom the right is claimed that he would have a cause of action against the intruder, and the prescriptive period does not begin to run until there is such an invasion." Here we have the testimony of the original purchaser of the island camp site that he passed over this right of way with the owner for the purpose of reaching the island property, and that, seeing there was no way of reaching the property except by boat, he inquired about the matter and was told that he might use the roadway they had passed over, obviously in connection with the use the grantor was then making of the way, and the rule is well settled that use by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription, since user as of right, as distinguished from permissive user, is lacking. If permissive in its inception, such permissive character will continue of the same nature, and no adverse user can arise until there is a distinct and positive assertion of a right hostile to the owner, and brought home to him. (9 R. C. L. 778.)

There is evidence that the original entry upon this beaten

track was by permission; it was in company with the owner and at his implied invitation. Before the grant of the island premises was made the owner granted permission to use this strip, and there is not the least evidence in the case that Mr. Baldwin or his successor in title ever did anything inconsistent with the rights of the owner of the mainland farm, or which suggested any higher rights in the beaten track than those enjoyed by the owner of the fee and his tenants. Neither of them ever made any improvements in the track; no dock was constructed, no change whatever appears to have been worked in the way by the owners of the island camp, and when the owner of the mainland farm changed the roadway, no protest was made, no suggestion that he had not a perfect right to do so, and he does not appear to have asked or received any permission in reference to the change. In *Kilburn* v. *Adams* (7 Metc. 33) it appeared that the plaintiff owned lands adjoining property upon which was situated an academy, and claimed a right of way from his land over the academy lot to a highway. The academy land had been left open during many years and crossed in all directions by the general public. The court held that although the plaintiff made more frequent use of the land than others such use was not inconsistent with the proprietor's rights and could not be the basis of an easement by prescription in the absence of some decisive act on the plaintiff's part indicating a use separate and exclusive from the general use. And such is undoubtedly the rule of law. (*Concklin* v. *N. Y. C. & H. R. R. R. Co.*, 149 App. Div. 739, 743; *New York Central & H. R. R. R. Co.* v. *Village of Ossining*, 141 id. 765.)

We are of the opinion that the fundamental objection to the relief granted in this case lies in the fact that Mr. Baldwin was the only person having any right whatever in the alleged right of way, in so far as the island property is concerned, and that he being dead the right is at an end. There are authorities holding that a way cannot be appurtenant to a close at which it neither begins nor ends; that one terminus must be on the land or tenement of the person claiming it. (*Fisher* v. *Fair*, 34 S. C. 203; 14 L. R. A. 333, 335; Washb. Ease. [4th ed.] chap. 2, ¶ 5, p. 257.) The latter says: "Ways are said to be appendant or appurtenant when they are inci-

dent to an estate, one terminus being on the land of the party claiming. They must inhere in the land, concern the premises, and be essentially necessary to their enjoyment." (See *Cadwalader* v. *Bailey,* 14 L. R. A. 300, a Rhode Island case, where it was declared that " the easement, being appurtenant to the land, cannot exist alone. It has no standing apart from the dominant estate to which it was attached.") It is declared that the more liberal view is that this is not necessarily the law; that the question depends upon the facts, and that this must be determined by the relation of the easement to the so-called dominant estate. Where the easement is not appurtenant to an estate it is known as an easement in gross, and is personal to the grantee, and dies with him. (9 R. C. L. 738, 739.)

In the instant case the alleged right of way begins at a public highway and ends at a public highway, the latter a navigable body of water. The premises were purchased for a summer camp, and were so used. That the right of way was not necessary to the enjoyment of the premises is shown by the fact that Mr. Baldwin for a long time operated a motor boat between the island and the dock at Plattsburgh from choice. The right of way did not lead to Valcour Island; it led to Lake Champlain, and passage over this common waterway did not operate to give the claimant or his predecessor any rights in the intervening lands or waters. (*Drake* v. *Curtis,* 1 Cush. [Mass.] 395, 416; *DeLancey* v. *Piepgras,* 138 N. Y. 26, 44, and authorities there cited.) When Mr. Baldwin purchased this island property as a summer camp he purchased with reference to the surroundings of his property. He had to use a boat in traveling to and from the premises, whether he landed at Plattsburgh, where he lived, or at the mainland, where he was obliged to provide for taking care of his horse. When he was in his boat he was upon a public highway, just as much as when he was driving between Plattsburgh and the mainland farm, and there is no law of which we are aware which requires that a purchaser of an island property shall be given an immediate right of way to a public road; a way by necessity would be fully provided for by affording the purchaser a way to the navigable waters of Lake Champlain, and while it might be convenient to have

the direct approach here under consideration there is not such a necessity as to raise any presumption that the way across the mainland farm was appurtenant to the Valcour Island property, or that it was a necessary incident to its enjoyment. (*Bauman* v. *Wagner*, 146 App. Div. 191, 195, and authorities there cited.)

As the beaten track was not properly appurtenant to the Valcour Island property it must be obvious that the permission to use the same was merely an easement in gross, terminating with the life of Mr. Baldwin, and that the plaintiff has no rights whatever outside of those expressly granted in his deed, which is confined to the island. (See *Commonwealth Water Co.* v. *Brunner*, 175 App. Div. 153, 158, 159.)

The judgment appealed from should be reversed and a new trial granted.

COCHRANE and H. T. KELLOGG, JJ., concur; JOHN M. KELLOGG, P. J., votes for modification and affirmance, with memorandum; VAN KIRK, J., not sitting.

JOHN M. KELLOGG, P. J. (dissenting):

It is not necessary that the dominant and servient estates should be contiguous or adjoining in order to have a right of way by prescription. (19 C. J. 864 (§ 3), B, and cases cited; 9 R. C. L. 738, and cases cited.) It is true that when the easement is established, as you look back at it, it is supposed to rest upon a lost grant; but the elements of the easement are the continued use of the right of way upon the servient premises under claim of right in behalf of the dominant estate. The loss of a supposed grant is a fiction, resorted to in old times in order to ease the conscience of the chancellors and give them something on which to stand in avoiding a technical rule of practice, but no evidence as to a grant is required. The conclusion as to a grant rests upon the idea that if there had not been a grant the owner in due time would have put an end to the wrongful occupation. (19 C. J. 873 (§ 18), 2, note 81, and cases cited; 9 R. C. L. 771, § 32, and cases cited.)

The question is purely one of fact and I am content with the decision of the trial court except the right of passage to and fro from the highway to the lake must be limited to

occasions and for the purpose of going to and coming from the premises on Valcour Island described in the complaint. I favor a modification of the judgment accordingly, and its affirmance as so modified, without costs.

Judgment reversed on the law and facts and new trial granted, with costs to the appellant to abide the event. The court disapproves of the following findings of facts numbered 5, 6, 12.