FLORENCE M. SEWALL and Others, Respondents, *v.* EDMOND J. FITZ GIBBON, Appellant.

JOSEPH GIOSCIA, Respondent, *v.* EDMOND J. FITZ GIBBON, Appellant.

Third Department, June 30, 1931.

*Harold J. O' Keeffe* [*Michael D. Reilly* of counsel], for the appellant.

*A. Page Smith*, for the respondents.

HILL, J. The owners of 271 and 273 Western avenue, Albany, have each recovered a judgment upon findings of the court and

the special verdict of a jury that they have a right of way to Ontario street over a driveway about eight feet wide which abuts the rear of their properties.

Prior to 1900 one Malcom was the owner of land located at the northeast corner of Western avenue and Ontario street, with a frontage of about one hundred and eighty feet on each street. This included the lands now owned by plaintiffs and defendant. The Western avenue frontage is now divided into eight lots. Of these, the six easterly ones have a uniform width of twenty-two feet and a depth of one hundred feet. The plaintiffs own two of these. At this time there is a driveway about eight feet wide which is one hundred feet northerly of and parallel with the northerly boundary of Western avenue. It leads from Ontario street to defendant's garage in the rear of the two easterly-most of the twenty-two-foot lots which front on Western avenue. It is over this driveway that the servitude is claimed.

When Malcom became the owner, the houses of the two plaintiffs had not been built, and the only structures standing on the premises were a house on the corner of these two streets west of plaintiffs' present premises, and a barn fronting upon Ontario street, upon or northerly from the present driveway in which the interest is claimed by plaintiffs. Prior to 1902, Malcom built the two houses of the plaintiffs, and in that year he conveyed the Gioscia premises, known as 273 Western avenue, to one Patton. In 1905 Malcom conveyed the Sewell lot, 271 Western avenue, to his sister, the witness, Mrs. Bullock, who owned it until 1911. Malcom then sold the remainder of his Western avenue frontage to a depth of one hundred feet, and four houses were erected upon the tract. A continuous fence, in the rear of plaintiffs' premises and of those four houses, was placed about six feet south of their northerly lot lines. There were narrow gates for pedestrians at the rear of each house. The unfenced portions of these lots formed a six-foot passageway which was immediately south of defendant's driveway. It did not extend to Ontario street, for that frontage, to a depth of about twenty-five feet, was occupied by a building the northerly line of which was substantially upon the south line of the driveway. Until about 1911, when the four houses were built on Western avenue and the building erected on the Ontario frontage south of the drive, Malcom used the old barn fronting on Ontario street in connection with his trucking and contracting business. His approach to the east end of the barn, where his horses were stabled, was made over that part of his premises where the drive is now located. He constructed a new barn on the east side of his lot in the rear of the two most easterly houses on the

tract he had formerly owned, and built the drive from Ontario street to the new barn. The barn, first used for horses and carts and the like, was later converted into a garage and sold to the defendant. In September, 1928, the defendant constructed a fence upon the southerly line of the driveway, and these suits were brought. Mrs. Bullock, who owned the Sewell premises until 1911, testified that during her ownership she never claimed any right to use the drive. Only two witnesses, Mrs. Harper and Lucius H. Washburn, testified to a use specifically beneficial to the plaintiffs' premises prior to January 1, 1909. Mrs. Harper lived at 275 Western avenue from early in 1908 until 1912. She saw ice trucks and other vehicles going along this drive perhaps six times a year. She was unable to state that these vehicles served the plaintiffs' premises. Washburn occupied the premises now owned by Gioscia from 1903 to 1906, inclusive. He describes the situation: " Why, the rear yard of 273 was fenced some fifty, sixty feet back of the house, and a gate. 271 was similarly fenced with a gate. * * * Q. Now, describe the driveway or alley? A. Well, it was simply a set of wheel tracks that came in from Ontario Street following the rear line of those fences and going east to some point that I don't know. They used a barn down there somewheres. Q. Did you ever use that driveway or alley? A. Why, I had my coal brought in there and ashes taken out, and on one occasion I had a load of it — some furniture brought there and then a load taken away to a summer camp. Q. Did you ever ask anybody's permission to use it? A. No. Q. Did anybody ever object to your using it? A. No. Q. Did you ever see any use made of it by occupants of the premises east of you, 271? A. I have a recollection that there were rigs set in front of that gate but it is not very positive. * * * Q. Now, you say that on occasions you took ashes out of your — the rear of your house and they were taken in an ash wagon and transported? A. Yes. Q. Did you ever tell — you knew who the owner of the property back of you was, didn't you? A. Why, at that time I assume it was the Hineys. Q. You think it was the Hineys? A. The Hineys. I never knew where their lands came. Q. You never told the Hineys that such use as you were making of that driveway was intended to deprive them of their exclusive rights to the driveway, did you? A. No, I didn't. Q. You weren't making any claim of right to this alley, only such use as you were making of it? A. No. Q. And you don't claim any right there now, do you? A. I am no longer living there. Q. No, but you didn't at that time? A. No." Several other tenants and owners of the plaintiffs' premises testified to a quite similar use from 1909 to 1928.

" To establish an easement in the land of another by prescription or adverse use, it is essential that the use and claim of right be actually known by the person against whom the adverse user is claimed, or it must be so visible, open or notorious as that knowledge of such use or claim will be presumed. (*Ward* v. *Warren*, 82 N. Y. 265; *Parker* v. *Foote*, 19 Wend. 309–313; *Nicholls* v. *Wentworth*, 100 N. Y. 455; Washb. on Ease. [3d ed.] 160; *Hannefin* v. *Blake*, 102 Mass. 297.) " (*Treadwell* v. *Inslee*, 120 N. Y. 458, 465.)

The mere use of a way that is kept open and is used by the owner for his own purposes, without other proof, gives rise to no presumption that the use is adverse. (*Moore* v. *Day*, 199 App. Div. 76; affd., 235 N. Y. 554.)

" Where a landowner opens up a way on his own land for his own use and convenience, the mere use thereof by another, under circumstances which do not injure the road nor interfere with the owner's use of it, will not in the absence of circumstances indicating a claim of right be considered as adverse, and will not ripen into a prescriptive right no matter how long continued." (19 C. J. 898.)

" The burden of proving all the facts necessary to constitute adverse possession is upon the one who asserts it." (*Lewis* v. *New York & Harlem R. R. Co.*, 162 N. Y. 202, 220.)

" Occupation must not only be hostile in its inception, but it must continue hostile, and at all times, during the required period of twenty years, challenge the right of the true owner in order to found title by adverse possession upon it." (*Lewis* v. *New York & Harlem R. R. Co.*, *supra*, 220.)

The first proven use of this drive, then consisting of two wheel tracks, for two loads of furniture and a few carts of coal and ashes, testified to by Washburn, was not so open and notorious as to notify the owner that this use was adverse to him and under a claim of right. If he knew of the use, an extension of so slight a neighborly courtesy should not be penalized by loss of estate. The fiction of a lost grant does not rest upon proof of use so limited as exists here. The drive was built by the owner for his own use. Gates or bars would have limited its usefulness to him.

The judgments and orders should be reversed on the law and facts, with costs, and the complaints dismissed, with costs.

All concur.

Judgments reversed on the law and the facts, with costs, and complaints dismissed, with costs in one action. Findings of fact numbered 1, 2, 5, 6 and 7 are reversed.