Fred J. Munder, J.
The plaintiffs seek a permanent injunction against the interference by the defendant with their claimed easement over a 10-foot strip along the easterly line of a plot of land owned by the defendant. The plaintiffs are owners of adjacent land. The lands of all parties were originally shown on a subdivision map entitled “ Map of Property of the S. T. Clock Realty Company, Fire Island Beach, Suffolk County, N. Y.” which map was filed in the Suffolk County Clerk’s office on June 13, 1912 as Map No. 470.
The map embraces a parcel of land extending from the Great South Bay to the Atlantic Ocean having a width generally of 340 feet. On the filed map there was shown along the westerly *524 boundary a 20-foot strip which apparently was to provide access from the bay and the ocean to the westerly tier of lots shown on the map. Immediately abutting the westerly tier of lots was a second or middle tier of lots. Along the easterly line of the middle tier of lots was another 20-foot-access strip and east of that was another tier of lots.
A few months after filing this subdivision map the S. T. Clock Realty Company caused to be made another map which is identical with the filed map except that it shows a 10-foot strip from the bay to the ocean along the westerly boundary line of the middle tier of lots which was taken from the easterly sides of the lots in the westerly tier. This second map was never filed but testimony was adduced that it was used as a sales map and further that at that time, in 1912, and for some years before there was a boardwalk where the 10-foot strip was shown which led to a dock on the bay side and that this dock and boardwalk provided the only access to the entire development at that time. It was also testified that then, as always, it was the accepted custom to traverse the lands of others with impunity, and to place boards in the sand to make walking easier. No owner, it was said, objected, and if one built on his land across such a path the other inhabitants simply detoured around the obstruction.
This development is known as Lonelyville, and it is essentially a Summer colony. As time went on, more people came to live there. Access now is generally had by a public ferry from Bay Shore to Fairharbor, with the inhabitants walking or taxiing along a path or road across private land. The dock and the 10-foot strip along Lot No. 22 which is here in dispute, is not then used. It is used only when the inhabitants come to Lonelyville by private boat or when they fish or swim in the bay.
On November 3, 1913, the S. T. Clock Realty Company conveyed to the Fire Island Fishing Company, Inc., Lot No. 22, which is the lot here in question presently owned by the defendant. It fronts on the bay and is in the western tier of lots. By the same deed there were also conveyed Lots No. 25 and No. 26, immediately to the south of Lot No. 22 on the western tier of lots, and also Lot No. 56, on the western tier, and Lots No. 58 to 63 which together formed the southern end of the western and middle tiers on the ocean front. The deed also conveyed to the fishing company a 10-foot strip of land taken from the easterly ends of the lots on the western tier between Lot No. 26 and Lot No. 56. Thus the fishing company became the owner of lots on the bay, lots on the ocean and a 10-foot strip to join *525 them. Over this 10-foot strip and their other land the fishing company built a substantial plankway on which was built a railway to haul fish from boats on the ocean side to fish traps in the bay.
Up to the time of this conveyance, absent any contrary testimony, it must be assumed that the realty company had sold none of the lots in the western tier and, consequently, it was able to convey the 10-foot strip to the fishing company.
The fishing company was dissolved in 1916 and on November 28, 1916, it conveyed to a trustee for some individual stockholders, among whom was the plaintiff, Dr. George S. King, all of the lots and the 10-foot strip that had previously been conveyed to the fishing company.
None of the present plaintiffs owns any lot previously owned by the fishing company nor is there any evidence that any deed made by the S. T. Clock Realty Company or the Fire Island Fishing Company, Inc., specifically conveyed any rights in any 10-foot strip. There is no evidence whether or not the trustee for the fishing company stockholders ever conveyed to anyone the 10-foot strip.
The plaintiffs here claim no right by conveyance. Their sole claim now is a vested right of access based on an implied easement. On the trial and in their brief, plaintiffs argue that they and all other lot owners in this development are entitled to this easement. Their action, however, is not a representative one. They sue on their own claims alone.
As to them there is no proof that they or their predecessors in title purchased from the S. T. Clock Realty Company before that company sold the 10-foot strip to the fishing company. Therefore, not being the owner of or possessor of a lesser interest in the 10-foot strip, the Clock Company could convey no right in the 10-foot strip and no right could arise in favor of its subsequent purchasers by implication. The conveyance to the fishing company having been recorded, all subsequent purchasers from the realty company are presumed to have had notice thereof.
After the fishing company acquired title to the strip and erected the dock, or only improved it, if use was made of it by others such use must be assumed to have been by permission and not such as would give rise to a prescriptive right. (Moore v. Day, 199 App. Div. 76.) This would be consistent with the prevailing custom of permitted trespass under which no claim of grant or right is asserted as a predicate of adverse user.
As for the plaintiff, Dr. George S. King, he must be the last to claim adverse user or an implied easement, having been a *526 participating equitable owner in the fishing company strip and lots and thus having actual knowledge of the facts.
For another reason there can be no implied easement of access. The dock and boardwalk may be a convenience, but, from the evidence, it is not the only access to the lots. On the map itself other ways were laid out which gave access to every lot in the development. What made the dock at Lot No. 22 more convenient was the fact that there is deeper water at that point than at the northerly ends of the designated ways. But there seems, to be nothing to prevent the owners from dredging a basin and erecting docks to meet the designated ways. Furthermore, the dock is only occasionally used. The more common mode of travel is the public ferry at Fairharbor, and in such mode there is not only no necessity to use any part of Lot No. 22 but in fact it never is used.
None of the cases cited in plaintiff’s brief sustains an easement under the peculiar conditions here existing, nor does any principle of law or equity require such a finding.
I conclude therefore that the plaintiffs have wholly failed to establish any right to an easement and consequently have no right to a judgment restraining the defendant from interfering with the boardwalk on her land or its use by them or anyone else.
Submit findings and judgment dismissing the complaint in accordance herewith.